133 N.J. Super. 189 (1975)
336 A.2d 16
ESSEX COUNTY WELFARE BOARD, PLAINTIFF-RESPONDENT,
v.
CURTIS PERKINS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1974.
Decided March 14, 1975.
*192 Before Judges HALPERN, CRAHAY and ACKERMAN.
Ms. Rita L. Bender argued the cause for appellant.
Mr. Ralph J. Salerno argued the cause for respondent (Mr. William J. Tamburri. of counsel).
The opinion of the court was delivered by ACKERMAN, J.A.D.
Appellant asserts two points on this appeal. The first is that the Juvenile and Domestic Relations Court had no power or authority, in proceedings pursuant to R. 1:10-5 to enforce litigant's rights under a support order granted under the Poor Law (N.J.S.A. 44:1-143 et seq.) to place him on probation. The second point is that he was denied his rights of due process in the proceedings to enforce litigant's rights because he was not advised of his *193 right to counsel and he was also not advised of his privilege against self-incrimination under the Fifth Amendment.
A full outline of all the proceedings below is not necessary. In October 1968 appellant was ordered by the Juvenile and Domestic Relations Court, on complaint of the Essex County Welfare Board, to pay $40 a week through the Essex County Probation Office for the support of his wife and three children. He failed to comply and a proceeding to enforce litigant's rights was instituted. After a lapse of 1 1/2 years he was finally arrested and a hearing was held on October 8, 1971, at which time an order was entered reciting that he had been tried for nonsupport and suspending sentence on the condition that he be placed on probation for three years and, in addition to the conditions of probation set forth in N.J.S.A. 2A:168-2, that he pay $25 a week support through the probation office.
A second proceeding to enforce litigant's rights was subsequently commenced because of appellant's defaults. On October 31, 1972, after he had been arrested and another hearing held, an order was entered vacating arrears, increasing weekly support to $35 and "continuing probation."
He continued to fail to fully comply and in October 1973 he was again arrested and charged with violation of probation. He was provided with counsel and on November 28, 1973 a hearing was held before the late Judge Kenarik. At that hearing appellant asserted that the order of October 8, 1971, placing him on probation was invalid on the ground that probation cannot be imposed in a proceeding to enforce litigant's rights which is essentially civil in nature.
In a comprehensive oral opinion Judge Kenarik ruled that the 1971 order imposing probation was valid and proper. He entered a new order dated November 28, 1973, finding that appellant was guilty of violation of probation because of (1) failure to report to the probation officer as required by the conditions of probation, and (2) failure to make support payments. He concluded that appellant, who acknowledged that he had worked steadily for 17 years for the same employer *194 and had earned between $120 and $130 net a week during the period covered by the support orders, had the ability to pay and had no excuse for noncompliance. Although the judge recognized that appellant could be placed in jail until he complied with prior orders or promised to comply, he suspended sentence and continued probation. He further ordered that appellant should pay $35 a week support plus $10 arrears. This appeal followed.
It is apparent from the above that we have before us the typical case, so often faced by the juvenile and Domestic Relations Court, of a man who willfully fails to support his family over a period of years, forcing them to require ever-increasing assistance from public funds, and who makes sporadic contributions to support only because of court compulsion.
Appellant's main ground for appeal, as indicated above, is that the court lacked power to place him on probation. Although the appeal is from the order of November 28, 1973, it is also a challenge to the validity of the order of October 8, 1971. One may argue, as the respondent does here, that, having failed to take a timely appeal from the earlier order, appellant is foreclosed from questioning it. See Lathrop v. Lathrop, 57 N.J. Super. 532, 537 (App. Div. 1959); Quagliato v. Bodner, 115 N.J. Super. 133 (App. Div. 1971). However, since a timely appeal has been taken from the later order, which was necessarily predicated on the earlier order, we think that essential fairness mandates consideration of the manner in which the final result was reached and we pass to the merits.
The gravamen of appellant's argument is that probation is available only in criminal matters where punitive sanctions are permitted. He contends that probation subjects one to a curtailment of liberty and that one on probation is made to "feel like a criminal." It is claimed that probation is an alternative to a jail sentence, which is normally suspended but may be revived if the conditions of probation are violated, and it is argued that since a fixed jail sentence can never be *195 imposed in a proceeding to enforce litigant's rights and no imprisonment at all may be ordered if a defendant lacks ability to pay, probation is not appropriate because the threat of imprisonment for a fixed term on violation is lacking. He claims that the decision in New Jersey Department of Health v. Roselle, 34 N.J. 331 (1961), which emphasized the differences between contempt proceedings and those to enforce litigant's rights, supports his arguments.
We find that his contentions, rejected below, lack merit. Although we affirm essentially for the reasons stated by Judge Kenarik in his opinion below, we think it appropriate, since the basic powers and everyday practices of the Juvenile and Domestic Relations Court in imposing probation in support cases are involved, to make some additional comments.
There is no doubt that there is a vast difference between a contempt proceeding under R. 1:10-2 to 4 and a proceeding to enforce litigant's rights under R. 1:10-5. The latter is essentially a civil proceeding to coerce the defendant into compliance with the court's order for the benefit of the private litigant. In such proceeding the judge, before ordering any sanction, must determine that defendant has the ability to comply with the order which he has violated, and incarceration may be ordered only if made contingent upon defendant's continuing failure to comply with the order. Release must be available immediately upon defendant's compliance. Defendant may not be sentenced to a specific jail term. A contempt proceeding, on the other hand, is essentially criminal and punitive in nature. Its purpose is to punish defendant in the public interest for failure to comply with the order and it may be instituted only by the court. Defendant is entitled to counsel and other safeguards appropriate to criminal proceedings. A fixed jail sentence may be imposed. See New Jersey Department of Health v. Roselle, supra; In re Carton, 48 N.J. 9 (1966); In re Reeves, 60 N.J. 504 (1972); Pierce v. Pierce, 122 N.J. Super. 359 (App. Div. 1973).
*196 Because of the criminal aspects of contempt and the fact that a fixed jail term may be meted out, the right to place a defendant on probation and to impose the conditions of probation specified in N.J.S.A. 2A:168-2 has never been questioned in contempt proceedings. In re Ruth M. Buehrer et al, 50 N.J. 501 (1967). We deem it clear that probation may also be used in civil proceedings to enforce litigant's rights under R. 1:10-5.
In the ordinary case, where the court order which is the subject of enforcement proceedings pursuant to R. 1:10-5 involves only the performance of a single act, confinement until there is performance is the best solution and the imposition of probation is not a useful alternative. The same does not apply where the order of the court requires continuing performance  this is particularly true where the orders involved are support orders. Where the order is a continuing one and enforcement is contingent upon the ability to comply, which normally requires that defendant continue to work and earn money, incarceration will often serve only to remove his ability to perform. This does not solve the problems which his family has and serves only to increase the burden on the public since it frequently happens, as here, that there are related problems of administration of public assistance and welfare payment programs. See Buchanan v. Essex Cty. Welfare Bd., 117 N.J. Super. 541 (App. Div. 1971). Probation, despite the problems of enforcement if its conditions are violated, is a viable and practical alternative to coerce the defendant's continued compliance. It is preferable to imprisonment if it works.
Although there may be erroneous impressions to the contrary because the term "probation" is associated by most persons with criminal matters, the probation office in each county does not serve only in the criminal field. It is an arm of the state judicial system. It performs investigations and collects monies from the courts in both civil and criminal matters. For many years, in accordance with court rules so providing, support and alimony payments in almost all cases have *197 been paid through the probation office. See former R.R. 4:98-9(a), now R. 4:79-9(a). Probation as a judicial tool has not been limited to criminal matters. Wholly apart from practices which may have existed at common law and antedated specific statutory authority, the statutes relating to probation and the duties and functions of the probation office have provided since at least 1929 for probation or "supervision" in quasi-criminal and matrimonial and domestic relations cases as well as in criminal cases.[1] See N.J.S.A. 2A:168-1 through 13, particularly §§ 1, 4 and 11, having their source in L. 1929, c. 156. See also, Adamo v. McCorkle, 13 N.J. 561 (1953), cert. den. 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1080 (1954); Godfrey v. McGann, 37 N.J. 28, 34-35 (1962).
N.J.S.A. 2A:168-1 provides in part as follows:
When it shall appear that the best interests of the public as well as of the defendant will be subserved thereby, the courts of this state having jurisdiction over criminal or quasi-criminal actions shall have power, after conviction * * * for any crime or offense, * * *, to suspend the imposition or execution of sentence, and also to place the defendant on probation under the supervision of the chief probation officer of the county, for a period of not less than 1 year nor more than 5 years.
The courts having jurisdiction over juvenile or domestic relations cases, when it shall appear that the best interests of the public as well as of the person adjudged guilty of any offense, * * *, before such court will be subserved thereby, shall have power to place the defendant on probation for a period of not less than 1 year nor more than 5 years. * * *
N.J.S.A. 2A:168-11 provides in part that
*198 * * * The duties of probation officers shall be, among others:

* * * * * * * *
b. To receive under their supervision, on request of the court having jurisdiction, any person ordered to pay any sum for alimony or support in an order or judgment entered in a matrimonial action;
c. To receive under supervision any person placed on probation by any court within the county * * *;

* * * * * * * *
Lathrop v. Lathrop, 57 N.J. Super. 532 (App. Div. 1959), is a direct holding that probation may be imposed in a proceeding to enforce litigant's rights. There a judgment had issued out of the Chancery Division in a divorce case, granting custody of children to the wife and rights of visitation to the husband. The wife refused to allow visitation. The trial judge found the wife guilty of "civil contempt," imposed an indefinite sentence, suspended it, and placed her on probation for five years subject to seven conditions of probation, all relevant to visitation rights. This court affirmed that order. We held, first, that the order was authorized by the terms of the first sentence of N.J.S.A. 2A:168-1, authorizing probation in "quasi-criminal" actions; we concluded that the language of that portion of the statute, properly construed, confers upon courts the power to use probation as an adjunctive sanction in "civil contempt" cases. Secondly, we held that the adoption of N.J.S.A. 2A:168-1 through 13 and its predecessor statutes did not have the purpose or intention of preempting the entire field of judicial use of probation as it was known at common law, and that the inherent jurisdiction of the Chancery Division included any reasonable procedures designed to enforce judgments or orders for litigants, including the placing of a defendant on probation.
The correctness of the decision in Lathrop has never been questioned in subsequent cases. Nor has any attempt been made in the intervening years to amend the statute and thus the construction placed upon the first sentence thereof in Lathrop may be deemed to have been acquiesced in by the Legislature. The Roselle case, which it antedated by two years, *199 is not to the contrary. There the Supreme Court took the occasion to clarify and reaffirm the differences between public and private enforcement proceedings and to point out that the common use up to that time, in the court rules and elsewhere, of the term "civil contempt" to designate proceedings on behalf of a private litigant to enforce compliance with a court order was inaccurate and a misnomer. However, as is apparent from a reading of Chief Justice Weintraub's opinion in that case and the authorities therein cited, the basic substantive differences between contempt and private enforcement proceedings enunciated therein, summarized above, had long been established in our law. The Roselle case did not deal with the matter of probation or forbid its use in proceedings to enforce litigant's rights. Although in the fashion of the times references were made in Lathrop to "civil contempt" and "criminal contempt", the fundamental distinctions set forth in Roselle, which were subsequently carried into the court rules by amendment in 1965 (R.R. 3:8 and 4:87) and are now found in R. 1:10, were observed. See also Lathrop v. Lathrop, 50 N.J. Super. 525 (App. Div. 1958).
The decision in Lathrop that there is inherent jurisdiction to use the probation procedure where appropriate in civil proceedings to enforce litigant's rights is supported by the recent decision of the Supreme Court in State v. Carter, 64 N.J. 382 (1974). There it was held that courts have inherent power apart from statute to fashion "probation" to provide conditional releases for persons committed to state hospitals as criminally insane. Justice Pashman, writing for the court, said:
The fact that the Legislature has acted to provide a remedy does not mean that the judicial branch is limited to the boundary lines of strict legislative expression in fashioning or denying remedies in a particular case. * * *
* * * Probation has a deep-rooted common law basis. The enactment of a statute relating to a particular aspect of probation does not preempt the entire field. Lathrop v. Lathrop, 57 N.J. Super. 532, 538-539 (App. Div. 1959). It follows that a statute neglecting to mention probation would certainly not preempt the court's ability to *200 provide for it. * * * The courts have power to fashion psychiatric out-patient probation in the form of conditional releases. [at 392-393]
See also State v. Johnson, 42 N.J. 146, 174-176 (1964); N.J.S.A. 2A:10-1, last paragraph.
This inherent jurisdiction to use probation where it may reasonably be employed as an alternative to incarceration to enforce orders in favor of litigants is vested in the Juvenile and Domestic Relations Court. See N.J.S.A. 2A:4-18, 2A:4-19.
Because of the nature of the matter before it and the fact that it came up from the Chancery Division, the court in Lathrop held in the circumstances that "it is not necessary for us to determine whether the exercise of the probation procedure in this case may also be supported on the basis of the reference in the statute [i.e., N.J.S.A. 2A:168-1, second sentence] to courts having jurisdiction over `juvenile or domestic relations cases.'" 57 N.J. Super. at 538. We now hold that the second sentence of N.J.S.A. 2A:168-1 specifically vests authority in the Juvenile and Domestic Relations Court to impose probation in civil proceedings to enforce litigant's rights under support orders. Indeed, the provisions of N.J.S.A. 2A:168-11 (b) and (e) grant authority to that court to place a defendant, who is ordered to pay support, on probation prior to a failure to comply with the order.
For many years the court rules, consistent with the statutes relating to probation and the inherent power of the courts, including the Juvenile and Domestic Relations Court, to provide reasonable remedies to enforce their orders, have contained broad provisions providing for probation in terms which permit its use in civil proceedings to enforce litigant's rights under support orders. See R. 5:6-4, having its source in R.R. 6:6-5, second sentence, and R.R. 6:6-8, which had its source in Rule 6:5-8 of the 1948 Rules; R. 5:6-1, which had its source in R.R. 6:6-4, preceded by Rule 6:5-3(d) of the 1948 Rules. Indeed, for 16 years, from 1953 until 1969, *201 the rules contained a provision, similar to N.J.S.A. 2A:168-11(b), authorizing the court to place a defendant, ordered to pay support, on probation prior to any default under the order. The first sentence of R.R. 6:6-5, adopted in 1953, provided:
When the court has entered an order for support it may order the defendant to be placed under the supervision of the chief probation officer of the county to insure the carrying out of the terms of the order for support.
The proposed revision of the rules in 1966 included the carryover of the above provision, with minor language changes, as proposed R. 5:6-3(c), but it was omitted in the 1969 revision. See R. 5:6-3. The elimination of the provision was dictated by policy reasons rather than by any lack of power or authority, and it has not in any way affected the power of the Juvenile and Domestic Relations Court to place a defendant on probation after default in civil proceedings to enforce a support order pursuant to R. 1:10-5. Nor is the decision in Plath v. Plath, 99 N.J. Super. 394 (App. Div. 1968), a holding that such power is lacking. There the Juvenile and Domestic Relations Court, in issuing a support order, placed defendant, prior to default, on probation for one year, and the condition of probation was that defendant's salary should be turned over to the Probation Department which should thereupon budget said income and fix the amount of support for defendant's family and for his own needs. It was held that this order was illegal because it delegated to an agency other than the court itself the function of adjudicating the amount of support. The court said:
It was also error in this essentially civil proceeding to subject defendant, prior to adjudication of default of a prior order, see Lathrop v. Lathrop, 57 N.J. Super. 532 (App. Div. 1959), to the criminal and quasi-criminal probation procedures of N.J.S. 2A:168-2.
The court may not have so intended, but the order was so interpreted by the probation department in imposing a number of probation conditions appropriate only in a criminal or quasi-criminal context. Probationary supervision of the support order, in the background *202 of this particular case, should be confined in terms to the authority granted by R.R. 6:6-5. See N.J.S. 2A:168-11(b); Godfrey v. McGann, 37 N.J. 28, 34 (1962). [at 396, emphasis supplied]
The effect of Plath is rather clearly to affirm the validity of R.R. 6:6-5 permitting the placement of a defendant on probation at the time of entry of a support order prior to default thereunder so long as appropriate conditions of probation are fixed.[2] Moreover, it clearly approves the holding in Lathrop that probation may be imposed after default in civil proceedings to enforce litigant's rights under a support order and, by inference at least, indicates that the conditions of probation set forth in N.J.S.A. 2A:168-2 may be imposed in such cases.
The universal and long standing practice throughout the State of imposing probation in civil enforcement of litigant's rights in support orders is demonstrated by the contents of three memoranda issued over the years by the Administrative Office of the Courts for the benefit of judges and probation officers entitled "Suggested Procedures for Enforcement of Alimony and Support Payments".
The first, promulgated on July 29, 1966, outlined new procedures consonant with the rule changes adopted in 1965 to conform to the holding in the Roselle case. The suggested procedures included placing a defendant on probation in civil enforcement proceedings and enclosed sample forms, including a form of order where probation is used, ordering that "during the time necessary to bring support payments up to *203 date, defendant shall be placed on probation under the supervision of ____ County Probation Office."
The second memorandum was dated September 15, 1967. In discussing procedures under the relief to litigants rule, it stated (at 2):
Experience with the rule demonstrates in any event that most failures to observe the court's support orders may be cured without recourse to imprisonment. Yet under the rule, incarceration, limited to the period during which it takes the defendant to demonstrate a willingness to comply with the order, remains a possibility. Also possible are a variety of special probationary terms and conditions which need be limited only by the judge's ability to devise creative solutions, his sense of fitness, and understanding of human nature.
Sample forms of orders were included together with a set of standard conditions of probation. The suggested form of order for use in civil enforcement proceedings was the same as that included with the previous memorandum except that there was added to the provision for probation that the same should be "upon the standard conditions of probation applicable to support matters." The suggested standard conditions of probation were as follows:
STANDARD PROBATION CONDITIONS GOVERNING DEFENDANTS PLACED ON PROBATION BY THE COURT IN ORDER TO ENFORCE SUPPORT OR ALIMONY AWARDS:
1. You will pay through the Probation Department all monies ordered for support or alimony by the court.
2. You will report to the Probation Department any time you do not make payments as ordered by the court and explain to the Probation Officer the reason for your default.
3. You are to keep the Probation Officer informed of your home and employment address and promptly notify him whenever you change your place of residence or employment.
4. You will comply with any additional special conditions imposed by the court.
The third memorandum was dated October 2, 1972. It was issued, in part, as the result of the decision of the Supreme Court in In re Reeves, supra, to remind judges that the courts must adhere to due process requirements and comply with R. *204 1:10, differentiating between contempts and enforcement of litigant's rights proceedings. With respect to the latter, as in the case of the prior memoranda, a recommended alternative, after making careful inquiry into defendant's ability to pay, is to place defendant on probation, using either the standard conditions governing support orders or any special terms developed by the court for the particular situation. The same standard conditions of probation and sample forms of orders previously circulated were included with the memorandum.
Considering the above authorities and the long practice of the use of probation in the civil enforcement of support orders, we deem it clear that appellant's contentions lack merit. The use of probation is supported by express statutory sanction as well as by the inherent power of the court. No particular point is made by him that the order of
October 8, 1971 was improper because the conditions of probation were those enumerated in N.J.S.A. 2A:168-2. As we have indicated, the statutory authority is broad enough to permit imposition of such conditions where a defaulting defendant is placed on probation in civil enforcement proceedings and appellant's probation was not rendered illegal because such conditions were imposed. It is obviously preferable, however, that the more suitable standard conditions relating to probation in support matters as suggested by the Administrative Office should be used in the normal case. Cf. Plath v. Plath, supra.
Appellant's second ground of appeal does not entitle him to relief. He was provided with counsel at the proceedings in 1973 from which this appeal directly stems and was afforded due notice of the proceedings. There is no proof before us that he did not have adequate notice of the R. 1:10-5 proceedings against him in 1971 and 1972, in which probation was first imposed and continued. He apparently did not have counsel provided to him at those hearings, and did not receive Miranda warnings. However, in view of the nature of those proceedings and the limitations on permissible sentences, the fact that he did not appeal directly therefrom, *205 and the fact that he was not incarcerated as a result thereof, he has no basis for complaint. See David v. Strelecki, 51 N.J. 563 (1968) cert. den. 393 U.S. 933, 89 S.Ct. 291, 21 L.Ed.2d 269 (1969); State v. Macuk, 57 N.J. 1 (1970); State v. McGrew, 127 N.J. Super. 327 (App. Div. 1974); see Crist v. N.J. Div. Youth and Family Services, 128 N.J. Super. 402, 417 (Law Div. 1974).
Affirmed.
NOTES
[1] The summary of the Judicial Conference Committee Report on "Custody and Support" for 1950, contained in 73 N.J.L.J. 290 (1950), includes the following comment, "The report includes a suggestion that since the name `probation office' is often associated in the public mind with law enforcement and the criminal courts, a `friendlier' designation for the office be established because of the increasingly frequent use of their offices in domestic relations."
[2] In the 1969 edition of the Rules of Court, with comments and annotations by Sylvia B. Pressler, the following comment to R. 5:6-3 appears at 697:

"The first sentence of R.R. 6:6-5, included in the tentative draft as R. 5:6-3(c), authorized the court to place a defendant who is subject to a support order under the supervision of the Probation Department, even if there has been no violation of the order. This provision is eliminated. Cf. Plath v. Plath, 99 N.J. Super. 394 (App. Div. 1968)."