160 N.J. Super. 167 (1978)
388 A.2d 1342
STATE OF NEW JERSEY, PLAINTIFF,
v.
VIVIAN SPANN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 15, 1978.
*169 Mr. Donald S. Coburn, acting prosecutor, attorney for the State (Mr. Alfred J. Bennington, Jr., assistant Prosecutor, appearing; Ms. Susan L. Schwartz, Sp. Deputy Atty. Gen., on the Brief).
Mr. Thomas Menchin, deputy Public Defender, for defendant (Mr. E. Carl Broege, Assistant Deputy Public Defender, appearing).
FEINBERG, J.S.C.
Defendant moved to vacate the court order of termination from the Pretrial Intervention Program. The specific issue she raises is whether the court may impose restitution as a condition of participation in that Program.
The facts indicate that on December 16, 1976 defendant was indicted for violation of N.J.S.A. 2A:111-3 for failure to disclose the receipt of unemployment insurance benefits she received from September 23, 1974 through May 31, 1975. During March through May of 1975 defendant was also receiving welfare funds through the Aid to Families with Dependent Children Program. The receipt of benefits from the two welfare programs resulted in an overpayment of $471.00. On January 11, 1977 defendant applied for acceptance into the Pretrial Intervention Program. On March 31, 1977 she was admitted into the Program with a first postponement. The order had the notations "Restitution" and "Welfare Fraud $471." On July 13, 1977 defendant's supervisor in the PTI program requested a second postponement; she indicated that defendant had satisfied all of the conditions but was unable to make restitution. On August 24, 1977 a second postponement was ordered by the court. Defendant did not make restitution during this second period. Throughout the proceedings defendant has *170 maintained that she is innocent and should not be required to make restitution. On January 12, 1978 defendant was ordered to be terminated from the Pretrial Intervention Program for her failure to make restitution in the amount of $471.
On April 3, 1978 a hearing was held by this court to ascertain (1) whether defendant was properly informed of the requirements to make restitution, as contemplated by the court; (2) whether her refusal was based on her inability to make the restitution or as a result of her refusal or unwillingness to do so.
Testimony received clearly indicated that defendant was properly advised of the requirement for restitution and that the question of hardship and inability to pay was not in issue, but the issue involved was that alone of her refusal and unwillingness to do so.
Defendant asserts that the payment of restitution in the present case would be an admission of guilty to the welfare fraud indictment. Defendant further asserts that a paradox exists if a program which is chiefly designed to affect rehabilitation and correction must process applicants who are innocent and those in need of neither rehabilitation nor correction.
Defendant contends that for persons like her, admitted to the Program, the requirement of restitution cannot be justified in terms of any of the stated goals of the Pretrial Intervention Program.
Defendant fails to realize that admission to the Pretrial Intervention Program is not a matter of right but a privilege, subject to conditions and what might be referred to as pre-conviction probation. See State v. Braeunig, 135 N.J. Super. 89 (Law Division 1975).
It follows that pre-conviction probation likewise is within the inherent and implied judicial authority. United States v. Smith, 444 F.2d 61-62 (8 Cir.1971), cert. den. 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1974). The court there said, "(W)e think the course of the common law in England and the development of the *171 common law and statutory law in the United States demonstrate that the courts have the inherent power to place restrictive conditions upon the granting of bail." The Federal Bail Reform Act (1966), 18 U.S.C.A. 3146 et seq., authorizes federal courts to place an accused in the custody of a designated person or organization agreeing to supervise him, or to place restrictions on his travel, associations or place of abode, pending trial. [at 94]
The State submits that the imposition of restitution as a condition of participation in the Pretrial Intervention Program is proper. The authority for the establishment of PTI programs is contained in R. 3:28. That court rule was a judicial response to the need in appropriate cases for an alternative to ordinary criminal prosecution. In theory, appropriate offenders are to be screened out of the system early in the process and diverted to rehabilitative programs suited to their individual needs. A defendant is thus spared the ignominy of a criminal conviction, while the overburdened courts and prosecutors are relieved of the necessity of processing the cases of less serious offenders. If properly operated, therefore, diversion programs will benefit all concerned. The public, too, will be a beneficiary through the more rational allocation of limited criminal justice resources to dangerous and habitual offenders. The rule was promulgated pursuant to the authority granted to the court by N.J. Const. (1947), Art. VI, § II, par. 3, which provides in pertinent part:
The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts.
In State v. Leonardis, 73 N.J. 360, 368 (1977), the court stated that PTI, as a procedural alternative to trial, was within the practice and procedure which the court controls. In addition to the rule-making power, the opinion noted "the judicial power" granted in N.J. Const. (1947), Art. VI, § I, par. 1, and concluded (at 369) that "inherent in that judicial power is the judiciary's authority to fashion *172 remedies once its jurisdiction is invoked." Similarly, the decision in State v. Carter, 64 N.J. 382, 392 (1974), stated that "the court's power to fashion remedies in the realm of criminal justice is unquestioned." A judge who grants a PTI postponement may exercise this authority inherent in the judicial power to fashion an appropriate remedy. Ordering restitution as a condition of PTI may be appropriate in particular cases such as the present one where an individual has received an overpayment of welfare funds.
PTI programs serve two primary purposes  "the expeditious disposition" of criminal cases and "a rehabilitative function." "While the goal of expeditious disposition is certainly important and central to the PTI concept, it is at the same time subordinate to the rehabilitative function of PTI." State v. Leonardis, 71 N.J. 85, 98 (1976). This rehabilitative purpose is enunciated in Guideline promulgated in response to that decision. The comment to this guideline notes several rehabilitative tools which may be part of a PTI program, ranging from psychotherapy to employment placement. Since the probation department has been entrusted with authority to administer the PTI program, which includes imposing conditions on applicants that would be rehabilitative in nature, restitution is but one such tool at its disposal, and the program director, as a probation officer, may therefore appropriately impose restitution. See N.J.S.A. 2A:168-1 through 13, and Essex Cty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 196-197 (App. Div. 1975). Cf. State v. Harris, 70 N.J. 586, 592 (1976).
The State maintains that making restitution is not an admission of guilt but merely a recognition of the receipt of an overpayment in the amount of $471. Defendant's innocence is not in question since there is no proof at this point of an intent to defraud.
In State v. Graves, 60 N.J. 441, 451 (1972), the court stated that "though N.J.S.A. 2A:111-3 does not *173 expressly require intent to conceal or to fail to disclose a material fact, considering the scope of the statute and nature of the acts to be avoided, we think intent is a necessary element of the offense." Defendant's acknowledgment of the overpayment is not the equivalent of an admission of intent to fail to disclose her receipt of unemployment benefits. The overpayment may have resulted from inadvertence or ignorance. Receipt of excess welfare funds is not, therefore, necessarily an intentional welfare fraud. Consequently the repayment of excess funds does not, in itself, admit guilt to the crime charged in the present case.
This is in accordance with Guideline 4, which states:
Enrollment in Pretrial Intervention programs should be conditioned upon neither informal admission nor entry of a plea of guilty. Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective.
For that reason the restitution agreement is not admissible as a guilty plea in any future proceedings. Since guilt is not admitted, it is possible to avoid any Fifth Amendment challenge or confrontation.
The American Bar Association, in cooperation with the National Offender Services Coordination Program, prepared a pamphlet in February 1977 entitled, "Pretrial Intervention Legal Issues, A Guide to Policy Development," and on page 34 stated:
Proponents of PTI restitution argue, on the other hand, that the exclusion from program participation of a defendant who refuses to make restitution is not such a "penalty" offensive to the Fifth Amendment. They point out that since the threat of prosecution is the normal consequence of arrest, diversion can be viewed merely as an opportunity to avoid such normal consequence. Under this line of reasoning, prosecuting a defendant who refuses to provide restitution is not a penalty and so does not violate the privilege.
It is probably possible, however, to avoid any Fifth Amendment challenges, if mandatory PTI restitution is administered in such a way that guilt is not in effect admitted. When a defendant *174 is negatively terminated from a program, the restitution agreement should not be admissible thereafter on the issue of guilt. As a policy matter, it might be wise simply to statutorily prohibit the use of such evidence at subsequent trials to encourage defendants to make restitution and undergo pretrial diversion. In addition, the restitution itself should only be used to achieve program objectives. The focus of PTI must remain with the defendant, and programs should avoid becoming collection agencies.
Restitution is appropriate for many reasons in that it may deter future welfare fraud. As defendant's attorney already pointed out:
Guideline 1(e), according to the comments, cites the "public interest" in "pre-conviction rehabilitation" which "results in the deterrence of future misconduct." Guideline 2, if literally construed, appears to define the class of eligible defendants who need to undergo "necessary behavioral change" in order to deter "future criminal behavior.
PTI allows the court six months to implement that "necessary behavioral change" in order to deter future criminal behavior. Jurisdiction is limited by R. 3:28 to two adjournments of three months' duration. Where it appears at the outset that rehabilitation could not reasonably be accomplished within that time frame, the court is deemed to be without jurisdiction to admit an applicant into the program.
Restitution during the adjourned period would appear to be the best method of rehabilitation possible in welfare fraud matters. Recent studies have indicated that judges strongly support monetary restitution and exhibit a belief in its rehabilitative effectiveness.
Chief Justice Hughes recently stated in State v. Harris, 70 N.J. 586 (1976), that:
Restitution is not only an appropriate but frequently salutary technique in the criminal process, and in the purposes of the probation system contemplated by statute. N.J.S.A. 2A:168-1, 2.
In accordance herewith, this court holds that restitution is a proper condition for PTI participation in welfare fraud *175 cases. As indicated by this court at the April 3, 1978 hearing and in accordance with the mandate of State v. Harris, supra, a further hearing must be held to determine defendant's ability to make restitution and to settle the amount, if contested.
Motion denied.