NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3058-15T1

KARL HALLIGAN,

 Plaintiff-Respondent,

v.

JOHN O'CONNOR and
HARRY HODKINSON,

 Defendants-Appellants,

and

H&H REAL ESTATE INVESTMENTS,
LLC,

 Defendant.
__________________________________

 Argued July 6, 2017 – Decided July 19, 2017

 Before Judges Yannotti and Haas.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Hudson County, Docket No.
 C-55-12.

 Andrew R. Turner argued the cause for
 appellants (Turner Law Firm, attorneys; Mr.
 Turner, of counsel and on the brief).

 Steven L. Menaker argued the cause for
 respondent (Chasan Leyner & Lamparello,
 attorneys; Mr. Menaker, of counsel and on the
 brief; Kirstin Bohn, on the brief).

PER CURIAM

 Defendants John O'Connor and Barry Hodkinson appeal from a

February 26, 2016 Chancery Division order finding them in contempt

for failing to comply with an earlier order of the trial court,

and imposing a $250 sanction on each of them. Defendants also

appeal from the court's March 18, 2016 order requiring them to pay

a total of $1580 in counsel fees and costs to plaintiff Karl

Halligan's attorney in connection with his motion seeking the

contempt adjudication. Finally, defendants appeal from the trial

court's June 21, 2016 order finding them in contempt for failing

to pay the sanctions and counsel fees assessed in the previous two

orders in a timely fashion, and directing each defendant to pay

another $250 sanction to the court and $411.25 in counsel fees and

costs to plaintiff.

 On appeal, defendants contend that the trial court abused its

discretion in making these rulings because there was insufficient

evidence in the record to support the contempt adjudications.

Having reviewed the record in light of defendants' arguments and

the applicable law, we agree with defendants' contentions and

reverse all three orders.

 2 A-3058-15T1
 We derive the following procedural history and facts from the

record developed before the trial court. Plaintiff and defendants

formed H&H Real Estate Investments LLC, (H&H), a limited liability

company (LLC), to act as the holding company for a property and

building they purchased in which they operated a bar and

restaurant. The parties formed a second LLC, Park Avenue Bar &

Grill LLC (Park Avenue), to operate and manage the bar and

restaurant.

 Following a number of disputes between the parties concerning

the operation of their businesses, plaintiff sued defendants for

breach of their duties and obligations under the LLCs' operating

agreements, and he sought to dissolve both of the LLCs. Defendants

filed an answer and counterclaim asserting, among other things,

that plaintiff had wrongfully limited their access to the business

property and its books and records.

 Following a multi-day trial, the trial judge rendered a

decision on November 14, 2013 requiring plaintiff to cede

managerial control over, and dissociate himself from, the two

LLCs. The judge also ordered the two LLCs, which were not parties

to the lawsuit, to pay plaintiff $793,772.50, representing equity

compensation, salary, and tax reimbursement. On March 18, 2014,

the judge issued a conforming judgment.

 3 A-3058-15T1
 On March 20, 2014, plaintiff and defendants entered into a

consent order in which they agreed that each individual party was

"barred from selling, mortgaging, renting, leasing, liening,

hypothecating or in any manner whatsoever encumbering the

property" owned by H&H in which the bar and restaurant had been

operated. The next day, plaintiff dissociated himself from the

two LLCs.

 In November 2014, defendants filed a motion to vacate the

portions of the March 18, 2014 order that required H&H and Park

Avenue to make monetary payments to plaintiff because neither LLC

had been a party to the lawsuit. At oral argument on March 20,

2015, the trial judge acknowledged this mistake and granted

defendants' motion. The judge also permitted plaintiff to amend

his complaint to add the two LLCs as defendants. The judge signed

a conforming order setting out these rulings on April 6, 2015.

The judge subsequently denied plaintiff's motion for

reconsideration.

 On May 8, 2015, the trial judge granted plaintiff's motion

for another order concerning the future sale of H&H's property.

In pertinent part, this order stated:

 Effective[] immediately and subject to
 further [o]rder of the [c]ourt, Halligan,
 O'Connor and Hodkinson (collectively, the
 "[p]arties") are restrained and barred from
 selling, mortgaging, renting, leasing,

 4 A-3058-15T1
 liening, hypothecating or in any manner
 whatsoever encumbering the property [owned by
 H&H in which the bar and restaurant had been
 operated].

 The order further provided that "[a]ny one of the [p]arties

may move to dissolve or modify the restraints contained in the

[o]rder upon [seven] days['] notice to the other [p]arties[.]"

Significantly, the order only named plaintiff and the two

defendants in their individual capacities. Plaintiff had still

not named H&H, the LLC which owned the property, as a party to the

litigation.1

 On August 25, 2015, plaintiff filed a "Revised First Amended

Complaint" that named H&H as a defendant. In this new pleading,

plaintiff sought damages against H&H for breach of contract and

other related claims. The amended complaint also continued to

name O'Connor and Hodkinson as individual defendants, even though

plaintiff was no longer asserting any claims against them.2

 Thereafter, the trial judge conducted at least one case

management conference with the parties. Although the judge could

1
 By this time, the Park Avenue LLC had filed a petition for
bankruptcy and its assets had been sold.
2
 As a trial judge later explained in a June 21, 2016 order and
decision transferring the matter to the Law Division, plaintiff
"represented that the two individual[] [defendants] were named for
consistency in the pleadings, but no[] claims were asserted against
them."

 5 A-3058-15T1
not recall the specific conference when this occurred, he stated

at a conference on January 13, 2016 that he had previously approved

a request by H&H to list its property for sale. Perhaps in

connection with that approval, H&H's attorney sent a letter to the

trial judge3 on January 4, 2016 stating "that the building owned

by [H&H was] under binding contract for sale with an anticipated

closing date at the end of February."

 At the January 13, 2016 case management conference that

followed, the trial judge asked H&H's attorney if the matter could

be resolved once the property was sold. At that point, plaintiff's

attorney asserted "that whoever signed a contract of sale for that

building has violated" the May 8, 2015 order barring a sale until

further order of the court. In response, H&H's attorney stated

that since plaintiff's attorney was not objecting to the actual

sale of the property, she "hope[d]" the judge "would make the

ruling . . . that we can go forward with the sale of the building."

 The trial judge noted that there were no motions currently

pending before him and plaintiff's attorney then stated that he

planned to file an application to hold defendants in contempt of

the May 8, 2015 order. The judge replied that if that occurred,

H&H's attorney would simply file "a motion . . . to approve the

3
 The attorney also sent a copy of the letter to plaintiff's and
defendants' attorneys.

 6 A-3058-15T1
sale." Thus, the judge suggested, but did not require, that the

parties confer to attempt to resolve the matter before any motions

were filed.

 However, plaintiff instead filed a motion on January 19, 2016

seeking an order "[p]ursuant to R. 1:10-3 holding John O'Connor

and/or Harry Hodkinson in contempt" for allegedly violating the

May 8, 2015 order. Plaintiff asked the trial judge to impose a

monetary sanction upon the individual defendants and award him

counsel fees and costs. Plaintiff also requested oral argument

on the motion. Significantly, plaintiff did not seek to have the

sale enjoined.

 In a certification attached to the motion, plaintiff's

attorney acknowledged that "[i]t is presently unknown whether

O'Connor or Hodkinson, both of them, or someone else acting at

their direction on behalf of H&H executed the contract, but whoever

it was, is in contempt of the" May 8, 2015 order. The attorney

also conceded that he did not have a copy of the contract of sale.4

 H&H did not file a response to this motion, but defendants'

attorney submitted a letter in opposition. The attorney pointed

4
 In his appendix on appeal, plaintiff has provided the first page
of what purports to be an "agreement of sale" concerning the
property. This document is undated and lists H&H, rather than the
individual defendants, as the seller. The name of the purported
buyer has been redacted and it is not known whether the agreement
was signed by either defendant.

 7 A-3058-15T1
out that the property had not yet been sold and that although

defendants were the two remaining principals in H&H, the LLC owned

the property.

 The judge did not conduct oral argument on the motion or a

plenary hearing to resolve the factual disputes raised by the

parties concerning the identity of the individuals or entities

that were responsible for entering into an agreement of sale for

the property. Instead, on February 26, 2016, the trial judge

issued an order granting plaintiff's motion to hold defendants in

contempt. The judge ordered each individual defendant to pay $250

to the court as a sanction, and to pay plaintiff's counsel fees

and costs in connection with the motion.

 In a one-page statement of reasons appended to the February

26, 2016 order, the trial judge stated:

 After a careful review of the submissions by
 both parties, the [c]ourt concludes that the
 execution of the sales contract for [the
 property] is a clear violation of this
 [c]ourt's [o]rder dated May 8, 2015. Pursuant
 to that [o]rder, [d]efendants . . . O'Connor,
 and Hodkinson were "restrained and barred from
 selling, mortgag[ing], renting, leasing,
 liening, hypothecating or in any manner
 whatsoever encumbering the property."

 . . . .

 Plaintiff argues that "O'Connor and Hodkinson
 have repeatedly demonstrated in the past and
 continue to demonstrate at present contempt
 for the process of this court and their self-

 8 A-3058-15T1
 interested disregard of court orders." I
 agree.

 The trial judge's provided no further explanation for his

ruling. Thus, the judge did not address the fact that he had

previously approved the listing of the property for sale; the

absence of an agreement of sale in the record before him; the fact

that the property had not yet been sold; the role either individual

defendant played in the alleged sale; or the lack of any objection

by plaintiff to the sale of the property.

 In a March 18, 2016 order, the trial judge determined the

amount of the counsel fees and costs ($1580) defendants were

required to pay plaintiff's attorney. Defendants then filed a

notice of appeal to this court.

 When defendants failed to pay the counsel fees to plaintiff's

attorney within thirty days as required by the March 18, 2016

order, plaintiff filed another motion "pursuant to R. 1:10-3" to

hold defendants in contempt. Plaintiff sought the imposition of

additional monetary sanctions upon each individual defendant, and

payment for the counsel fees and costs he incurred in the

preparation of the motion. Plaintiff again requested oral argument

on the motion.

 In opposition to this motion, defendants' attorney submitted

a certification pointing out that defendants had filed a notice

 9 A-3058-15T1
of appeal from the February 26, and March 18, 2016 orders. The

attorney explained that he contacted the trial judge to seek a

stay of the two orders pending appeal, but was advised that the

judge had recently retired. Defendants' attorney then spoke to

plaintiff's attorney to request his consent to the entry of a

voluntary stay, but the attorney declined and, instead, filed the

contempt motion. Under these circumstances, defendants' attorney

argued that his clients had not willfully failed to comply with

the two orders.

 H&H's attorney also filed a certification in opposition to

plaintiff's motion. The attorney asserted that H&H owned the

property; was not a party to the litigation at the time the May

8, 2015 order was entered; and the property had not been sold.

 A new trial judge was assigned to review the motion pleadings.

Without conducting oral argument or a plenary hearing, the judge

entered an order on June 21, 2016, granting plaintiff's motion to

hold defendants in contempt of the February 26, and March 18, 2016

orders. The judge ordered each defendant to pay an additional

$250 to the court and $411.25 in counsel fees and costs to

plaintiff.

 The trial judge made no specific findings of fact or

conclusions of law in connection with this ruling. Instead, the

judge merely wrote at the bottom of the order that he was granting

 10 A-3058-15T1
plaintiff's motion "for the reasons set forth in [p]laintiff's

April 27, 2016 [c]ertification and May 23, 2016 reply brief." The

judge did not mention any of the contentions raised by defendants

and H&H. By leave granted, defendants later amended their notice

of appeal to include the June 21, 2016 order.

 Shortly thereafter, a third trial judge was assigned to the

matter. On August 11, 2016, the judge granted H&H's motion to

sell its property for $1.1 million and to distribute the proceeds.

On August 19, 2016, the judge denied plaintiff's motion for yet

another order holding defendants in contempt for failure to pay

the amounts due under the February 26, March 18, and June 21, 2016

orders.5

 On appeal, defendants contend that the trial judges' rulings

are "not supported by the record" and "constitute an incorrect

application of discretion[.]" We agree.

 Plaintiff brought his two "contempt" motions against

defendants under Rule 1:10-3, which, in pertinent part, provides

that:

 [n]otwithstanding that an act or omission may
 also constitute a contempt of court, a
 litigant in any action may seek relief by
 application in the action. A judge shall not

5
 In compliance with the August 19, 2016 order, defendants
subsequently paid plaintiff all amounts due under the three orders,
while reserving their right to have these funds returned if they
are successful on appeal.

 11 A-3058-15T1
 be disqualified because he or she signed the
 order sought to be enforced. . . . The court
 in its discretion may make an allowance for
 counsel fees to be paid by any party to the
 action accorded relief under this rule.

 "[A] proceeding to enforce litigants' rights under Rule 1:10-

3 'is essentially a civil proceeding to coerce the defendant into

compliance with the court's order for the benefit of the private

litigant[.]'" Pasqua v. Council, 186 N.J. 127, 140 (2006) (quoting

Essex Cty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App.

Div.), certif. denied, 68 N.J. 161 (1975)). Thus, an application

for relief under Rule 1:10-3 is distinguishable from "[a] criminal

contempt proceeding under Rule 1:10-2[,]" which "is 'essentially

criminal' in nature and is instituted for the purpose of punishing

a defendant who fails to comply with a court order." Ibid.

(quoting Essex Cty. Welfare Bd., supra, 133 N.J. Super. at 195).

Accordingly, "[r]elief under R. 1:10-3, whether it be the

imposition of incarceration or a sanction, is not for the purpose

of punishment, but as a coercive measure to facilitate the

enforcement of the court order." Ridley v. Dennison, 298 N.J.

Super. 373, 381 (App. Div. 1997).

 We review a trial court's imposition of sanctions against a

litigant pursuant to Rule 1:10-3 under the abuse of discretion

standard. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011).

"An abuse of discretion 'arises when a decision is made without a

 12 A-3058-15T1
rational explanation, inexplicably departed from established

policies, or rested on an impermissible basis.'" Ibid. (quoting

Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Applying these principles, we are constrained to reverse all three

orders sanctioning defendants under Rule 1:10-3.

 We turn first to the February 26, 2016, and March 18, 2016

orders which sanctioned defendants $250 each for their "contempt"

of the May 8, 2015 order barring the sale of H&H's property, and

required them to pay plaintiff's attorney $1580 in counsel fees

and costs. There was clearly insufficient evidence in the record

to support the judge's finding that defendants, as opposed to H&H

as a business entity represented by its own counsel, were

individually or collectively responsible for the contract of sale.

As plaintiff's attorney conceded in his certification supporting

the motion, it was not known at that time whether either defendant

"or someone else acting at their direction on behalf of H&H

executed the contract[.]" In addition, the judge did not address

defendants' contention that H&H was not bound by the May 8 order

because the LLC was not even a party to the litigation at the time

the order was entered.

 Moreover, it is not clear on this record whether any willful

violation of the May 8 order occurred as the result of the

execution of a contract of sale. In this regard, the trial judge

 13 A-3058-15T1
specifically acknowledged that he had earlier approved a request

by H&H to list the property for sale. Even so, the judge did not

address this approval in his sparse written decision.

 H&H's attorney also stated at the January 13, 2016 case

management conference that she intended to file a motion with the

court to permit the sale to proceed, which was in keeping with the

literal terms of the May 8 order. Under these circumstances,

there was insufficient evidence in the record to support a

conclusion that either individual defendant willfully violated the

order.

 Finally, we again note that orders entered under Rule 1:10-3

are intended to be coercive, rather than punitive. Ridley, supra,

298 N.J. Super. at 381. Here, plaintiff never asked the trial

judge to enjoin the sale of the property and the judge did not do

so on his own motion. Instead, the orders merely imposed monetary

sanctions upon defendants which, on their face, did nothing "to

facilitate the enforcement of the [May 8, 2015] court order."

Ibid. Therefore, we reverse the February 26, 2016, and March 18,

2016 orders.

 For similar reasons, we also reverse the second trial judge's

June 21, 2016 order imposing additional sanctions and counsel fees

and costs after defendants failed to pay the initial assessments

within thirty days. As explained in defendants' attorney's

 14 A-3058-15T1
certification in opposition to plaintiff's motion, defendants had

filed an appeal to challenge the two earlier orders and were in

the process of seeking a stay pending that appeal when plaintiff

filed another Rule 1:10-3 application. Under these circumstances,

we are unable to conclude that defendants' delay in paying the

sanctions was willfully contemptuous.

 Significantly, the trial judge who handled this application

never made such a finding. Indeed, rather than expressly setting

forth the facts which led to his decision, the judge merely stated

that he was granting the motion for the reasons set forth in

plaintiff's pleadings. Such an approach does not constitute

adequate fact finding. In In re Trust Created by Agreement Dated

Dec. 20, 1961, 399 N.J. Super. 237, 253-54 (App. Div. 2006), aff’d,

194 N.J. 276 (2008), we held that a trial judge may grant or deny

a motion for the reasons posited by the parties only if "the judge

makes such reliance explicit"; makes "clear the extent of his [or

her] agreement with and reliance on [the] proposed findings of

fact and conclusions of law"; and "supplie[s] a summary of his [or

her] findings in [the] . . . opinion" that clearly demonstrates

"that the trial judge carefully considered the evidentiary record

and did not abdicate his [or her] decision-making responsibility."

Therefore, the June 21, 2016 order must also be reversed.

 Reversed.

 15 A-3058-15T1