**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2269-23

JASON LEVENTHAL,

     Plaintiff-Appellant,

v.

LORI ANNE DI PAOLO-
LEVENTHAL,

     Defendant-Respondent.

_____

Submitted February 6, 2025 – Decided February 13, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0624-20.

Einhorn, Barbarito, Frost & Botwinick, PC, attorneys for appellant (Bonnie C. Frost and Jessie M. Mills, on the briefs).

Law Office of Steven P. Monaghan, LLC, attorneys for respondent (Kristin S. Pallonetti, on the brief).

PER CURIAM

Plaintiff Jason Leventhal appeals from portions of post-judgment orders dated November 17, 2023, January 4, January 16, and February 29, 2024. Collectively, these orders granted defendant Lori Anne Di Paolo's requests to enforce litigant's rights of an amended final judgment of divorce and denied plaintiff relief from enforcement of the judgment based on his alleged inability to pay. We affirm.

The judge who heard the post-judgment motions also tried the parties' divorce. In a companion case involving plaintiff's challenge to the judgment of divorce and the amended judgment of divorce dated March 29 and May 16, 2023, we affirmed the judge's findings of fact and conclusions of law regarding alimony, child support, equitable distribution, college expenses, and counsel fees. Leventhal v. Di Paolo-Leventhal, No. A-2754-22 (App. Div. Feb. 6, 2025). For the sake of brevity, we incorporate by reference our recitation of the facts and rulings from the companion case here.

Post-judgment plaintiff filed a flurry of similar motions and emergent applications, arguing he could not comply with his obligations under the judgment. On June 5, 2023, he moved for reconsideration of the judgment of divorce, which defendant responded to with a cross-motion to enforce litigant's rights. Then on June 29, 2023, he filed an order to show cause to stay alimony,

child support, and the portion of the judgment requiring him to distribute funds held in escrow from a lawsuit he had handled and settled with his former law partner in New York.

On July 7, 2023, the judge denied both of plaintiff's applications and granted defendant enforcement of the judgment of divorce. The judge noted the reconsideration motion presented no evidence or law the judge had overlooked. Rather, plaintiff disagreed with the judge's imputation of income to him and her findings that he "was deliberately keeping his income down." The judge recounted her findings regarding why, as a matter of law, plaintiff was entitled to take the funds from the New York case to pay his court-ordered obligations from the divorce. She also recited the findings she made pertaining to plaintiff's dissipation of marital assets and the fact defendant incurred substantial counsel fees due to plaintiff's misconduct.

The judge denied plaintiff's order to show cause to stay enforcement of his obligations because he failed to show irreparable harm, a likelihood of success on the merits, a settled legal right to the relief sought, or that the prejudice to him outweighed the harm to defendant. See Crowe v. DeGioia, 90 N.J. 126 (1980). The judge noted defendant was "living without much needed support" because plaintiff had not paid what he owed her.

A-2269-23

The judge enforced the judgment and gave plaintiff a week to liquidate accounts she had already ordered him to liquidate to pay defendant. At the time, plaintiff's arrears were nearly $17,000. She placed plaintiff on a two-missed payment bench warrant status and ordered him to pay an additional $1,000 per month toward the arrears in the event the accounts he liquidated did not satisfy the arrears. The judge also credited a payment plaintiff had made toward a marital tax liability against his arrears.

After plaintiff appealed from the judgment of divorce, defendant filed another enforcement motion in September 2023. She asked the judge to adjust plaintiff's warrant status to one missed payment. Plaintiff filed a cross-motion and re-asserted he lacked the ability to pay, and again asked for a stay of enforcement of the judgment.

On November 17, 2023, the judge entered an order finding plaintiff in violation of litigant's rights, granting defendant enforcement of the judgment and post-judgment order, and denying plaintiff's cross-motion. She found plaintiff had an ability to pay because he had access to the funds from the New York case, which he still refused to withdraw in its entirety to meet his obligations. Plaintiff also received a gift of $169,000 in March 2023, which had not previously been disclosed, and did not use to meet his obligations.

4

The November 2023 order: set plaintiff's arrears; ordered the parties' counsel to confer and agree on credits plaintiff would receive against his arrears; and rescheduled the matter for a conference on December 7, 2023. The judge also ordered probation to conduct an audit before she addressed plaintiff's warrant status. The judge noted she had refrained from granting defendant counsel fees in the July 2023 order, but now awarded her fees because of plaintiff's violation of the judgment and the July order.

When the matter returned to court in December 2023, the judge noted plaintiff's probation account had been credited more than $15,000 to account for expenses he had paid. Because plaintiff's alimony and child support obligations were payable monthly, the judge said she would place him on a one missed payment warrant status. Plaintiff testified he took money from the account containing the fees from the New York case, but did not pay defendant, and instead "put [the money] into [his] income." He offered to give defendant an accounting of how he spent the money.

Given the clear violation of the judge's orders, she addressed plaintiff and said: "I have concluded before, as I continue to conclude, that you are not credible and that you have cooked the books and that you do what you want to do in order to pay what you want to pay and when you want to pay it; and my

5

order stands." The December 7 proceeding ended without the entry of a court order.

On December 29, 2023, plaintiff filed an order to show cause to stay the enforcement proceedings. The judge heard oral argument on the emergent application on January 2 and 5, 2024. Plaintiff again claimed he lacked the ability to pay and contested the judge's findings from the divorce trial.

At oral argument, plaintiff sought an indefinite stay of enforcement and claimed he would have a forensic accountant review his books and records to prove he did not have the income to pay his court-ordered obligations. When the judge pointed out he could have paid his obligations by using the funds from the New York case, plaintiff responded the money was "used for [his] income and . . . normal business expenses." Defendant's counsel observed that plaintiff's support arrears exceeded $30,000, aside from the counsel fees and other credits due to defendant. Counsel noted plaintiff provided no proof of a job search and instead "goes to his office where he doesn't have any employees. He spends an unreasonable amount on marketing[] but doesn't get any files[,] and those files don't pay." The judge ordered the parties to return on another date to continue argument and address the credits due to defendant.

When the matter returned to court, plaintiff continued to argue he lacked the funds to pay defendant. He claimed he: only had $26,000; could not use the $148,000 set aside for marketing his firm because the money came from a small business loan and he would be violating the law by using the money for personal expenses; did not earn enough to meet his expenses and operated at a deficit; and defendant received more money than him.

The judge denied the order to show cause. She found plaintiff repeatedly failed to comply with her orders and re-asserted arguments she had already considered and rejected. The judge noted that when she entered the judgment of divorce, "there was still more than enough money from [plaintiff's] share of the [fees from the New York case] . . . to pay what was due and owing." Instead, plaintiff "dug a hole for himself. . . . [H]e didn't immediately cash out [the money,] which is what I said had to happen. Then when he finally did, he used it to pay business expenses." The judge formally ordered plaintiff would be on a one missed payment bench warrant status to align with his monthly payment obligation.

The judge entered the January 5, and January 16, 2024 orders memorializing her rulings. The latter order enforced the support obligations by compelling plaintiff to liquidate his retirement account, bear the taxes from the

7

liquidation, and pay his obligations to defendant. The order also clarified a provision of the judgment of divorce, which required the parties to pay their IRS debt for 2014-2016 on a sixty percent/forty percent basis between plaintiff and defendant, respectively. Based on the trial evidence, the judge understood the parties were on a payment plan with the IRS. However, post-judgment it was learned the IRS had been paid equally from the sale of the parties' former marital home. The January 16 order maintained the sixty-forty split, but memorialized that plaintiff owed defendant a ten percent credit.

## I.

On appeal, plaintiff argues the judge erred because she did not conduct an ability to pay hearing. He asserts a hearing was required because there were disputes in material facts, and by virtue of him being self-employed, the financial issues were more complex and necessitated an expert. Plaintiff claims he was "merely seeking some sort of relief in the form of a stay, or a payment plan based on his current financial circumstances." He contests the judge's income imputation, alleges it was based on estimates, and did not include his most recent earnings.

Plaintiff reiterates the judge ignored that he is operating at a monthly deficit and "chastised" him for spending his business loan to market for new

clients. He claims the judge also erred when she found he used firm revenue rather than the business loan for marketing purposes. Regardless, he asserts he has a right to run his business as he deems fit, and the judge should not have assumed he was diverting money away from defendant by marketing his business. He alleges the judge faulted him for making supplemental submissions.

## II.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (omission in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Appellate court intervention is warranted "'[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). However, "all legal issues are reviewed de novo." Ricci v.

Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

"Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action." R. 1:10-3. "[A] proceeding to enforce litigants' rights under Rule 1:10-3 'is essentially a civil proceeding to coerce [a party] into compliance with the court's order for the benefit of the private litigant[,]'" Pasqua v. Council, 186 N.J. 127, 140 (2006) (quoting Essex Cnty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)), and "a device to enable a litigant to enforce [their] rights." In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17 (2015). "The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott v. Burke, 206 N.J. 332, 371 (2011).

A condition precedent to granting enforcement under Rule 1:10-3 is that the court find the failure to comply with its orders was unjustified and willful. P.T. v. M.S., 325 N.J. Super. 193 (App. Div. 1999). "[P]unitive or coercive relief under the Rule cannot be used against one who is not a willful violator of a judgment." In re N.J.A.C. 5:96 & 5:97, 221 N.J. at 19; see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3 (2025) ("Before punitive or coercive relief can be afforded, the court must be satisfied that the

party had the capacity to comply with the order and was willfully contumacious.").

## III.

At the outset, we note that the several post-judgment hearings conducted by the judge were not on account of probation's enforcement of plaintiff's obligations. Instead, the hearings were the result of plaintiff's repeated applications to revisit the rulings made in the judgment of divorce and emergent applications to stay the judgment. The hearings were also a result of defendant's requests to enforce litigant's rights. However, the hearings were not for the purpose of determining whether plaintiff would be incarcerated at the instant.

Regardless, the judge considered the evidence plaintiff presented, including his testimony and the argument of his attorney. The record overwhelmingly established plaintiff had the ability to pay and was in willful violation of the judgment of divorce and the several post-judgment orders entered by the trial judge. In the companion case, we recounted and affirmed the judge's findings as to how she derived his income and earning capacity. Leventhal, slip op. at 29-40. We also affirmed the judge's ruling directing plaintiff to withdraw funds from the fees in the New York case and pay them to defendant. Id. at 41-48.

Nothing plaintiff presented in his post-judgment motions and emergent applications convince us the income imputation was an abuse of discretion or that the order to withdraw funds from his attorney account was a mistaken application of law. The post-judgment record underscores the judge's finding plaintiff willfully violated her orders when it was revealed he had taken funds from the New York case and received a large gift yet refused to pay defendant.

Although plaintiff now asserts a more elaborate ability to pay hearing was necessary because his business was complex, the record demonstrates he took the opposite position. The post-judgment hearing transcripts show he repeatedly implored the trial judge to grant him relief because he was a solo practitioner, without staff or associates, and his business operations were not complex.

Regardless of complexity, plaintiff never presented an updated Case Information Statement to show his alleged deficit. Instead, he presented business tax returns for 2021 and 2022, along with a personal return for 2022, and draft 2023 business and personal returns. As we noted in the companion case, the trial judge concluded plaintiff was able to manipulate his income and operated with a surplus. Id. at 15-19. These findings, in addition to the detailed findings the judge made regarding plaintiff's lack of credibility, id. at 29, 32, readily show why the tax documents were not dispositive.

We reject plaintiff's argument the judge was intolerant of his numerous post-judgment submissions. The transcripts of the post-judgment proceedings reveal the judge exhibited patience, indulged the parties by conducting several hearings amid a very busy calendar, and reached a just result.

Finally, our review of the record confirms the material facts were not in dispute, namely, that plaintiff was in willful violation of the judgment of divorce and post-judgment orders. As a result, the judge did not have to expand the scope of the hearing as plaintiff suggests. The evidence in the record showed defendant was entitled to enforcement, and plaintiff neither had grounds for relief from the judgment on an emergent basis or otherwise, nor the right to a stay.

To the extent we have not addressed an argument raised on appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2269-23