**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0257-20

IRFAN SULEMAN, ABDUL
AZIM KHAN, FARRAH
SULEMAN, MISHUK
MOWLA, MOHAMMAD
ASLAM, and ASIF KHAN,

      Plaintiffs-Appellants,

v.

ZIAULHUQ ZIA, NABEEL
ATTIA, ZAHID CHOWDHRY,
SAGHEER UL HAQUE, and
FARID KHAN,

      Defendants-Respondents.

_____

Argued November 8, 2021 – Decided November 29, 2021

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0634-18.

George N. Polis argued the cause for appellants.

Saif M. Agha argued the cause for respondents (Agha & Agha, LLP, attorneys; Saif M. Agha, on the brief).

PER CURIAM

Plaintiffs Irfan Suleman, Abdul Azim Khan, Farrah Suleman, Mishuk Mowla, Muhammad Aslam, and Asif Khan appeal from an order denying their Rule 1:10-3 motion to enforce a May 8, 2020 order against defendants Ziaulhuq Zia, Nabeel Attia, Zahid Chowdhry, Sagheer Ul Haque, and Farid Khan. We find no basis in the record to conclude the court's denial of plaintiffs' motion constituted an abuse of discretion, and we therefore affirm.

I.

Plaintiffs' complaint alleged they are members or recently former members of a mosque operated by the Islamic Center of Ocean County, Inc. (ICOC). Plaintiffs further alleged defendants are members of the ICOC's Board of Trustees (Board), which is also referred to as the ICOC's Oversight Board.[1] The complaint claimed defendants had been ICOC trustees beyond the maximum six-year terms permitted for non-profit organizations under N.J.S.A.

---

[1] Although the parties variously refer to the board as the Board of Trustees and Oversight Board, for consistency and ease of reference, we will refer to it as the "Board."

A-0257-20

15A:6-4, and sought an order directing an election for new trustees.[2]  The complaint also alleged defendants engaged in ultra vires actions in violation of the ICOC's bylaws.[3]  In the first amended complaint, plaintiffs added a claim defendants violated the ICOC's bylaws, and plaintiffs requested an order directing the ICOC to hold elections for trustee positions on the Board.

In an October 4, 2019 consent order, the parties resolved all claims asserted in the complaint.  The ICOC's bylaws provide in part that to vote in an ICOC election, an individual's "[v]oting [m]embership application" must be filed "at least by June 30" of the preceding calendar year.  In the consent order, the parties agreed to extend the deadline for voting membership applications to December 31, 2019.  They also agreed applicants would not be disqualified from voting membership based on "involvement in [the] case."  The parties further agreed ICOC elections "shall be" held "around April 6, 2020."

More particularly, the terms of the parties' settlement agreement, as set forth in the consent order, are as follows:

---

[2]  N.J.S.A. 15A:6-4 provides that "a class of trustees" of a non-profit corporation "shall not hold office for a term shorter than [one] year or longer than [six] years."
[3]  The ICOC's bylaws are entitled the "Constitution of the Islamic Center of Ocean County Inc."  The parties and the court variously referred to them as the "bylaws" and "constitution," and sometimes as the "bylaws and constitution." For ease of reference and clarity, we refer to them as the "bylaws."

1. Membership [in the ICOC] shall be open to all who meet the [b]ylaw requirements until December 31, 2019.

2. <u>Involvement in this case shall not preclude anyone from membership i.e. denial under Article IV(A)(f).</u> (Art. IV[,] Section A, Subsection A, Part (f)[)].

3. Anyone disagreeing with the decisions of the Executive Committee or Overseers shall have an absolute right to appeal to the ICOC Overseers.

4. Any person who is a member of the ICOC as of December 31, 2019, shall have the right to vote in the ICOC's 2020 election.

5. The current Oversight Board shall transfer power to newly elected members of the Oversight Board once the results of the election are announced and ratified by the Overseer in charge of said election, in due course.

6. Attorneys for the parties may be present at the 2020 election.

7. The current Oversight Board members may run again for all future elections.

8. The date for the election shall be around April 6, 2020, the annual meeting of the ICOC.

[(Emphasis added).]

The order's prohibition against precluding an individual from voting membership based on "[i]nvolvement in this case" refers to Article IV, Section A, Subsection A, Part (f) of the ICOC's bylaws. Subsection A of the bylaws

4

defines the "Eligibility Criteria" for voting membership in the ICOC and sets forth the "requirements" to qualify for voting membership. Part (f) provides that to qualify for voting membership in the ICOC, an individual "shall refrain from any expression or action detrimental to the [c]ause of Islam, [the] ICOC or the [u]nity of the Community."

In March 2020, plaintiffs moved to enforce the October 4, 2019 consent order. The motion was supported by a March 4, 2019 certification from plaintiff Irfan Suleman, who asserted that on December 31, 2019, he delivered 147 membership applications to an ICOC Board member. Suleman further certified he had requested updates on the status of the applications and had not received a response from any of the Board's members. He also stated that no date had been set for the election of the Board's members.

In support of their motion, plaintiffs also relied on the reply certification of Tahir Shah, who had been a member of the ICOC for more than twenty years, and had previously served on the Board. Shah explained the ICOC "has always had a [M]embership [C]ommittee" that was involved in "processing the membership applications." Shah stated "[t]he ICOC [M]embership [C]ommittee usually reviews the application package . . . from new applicants for completeness," requiring a completed application form, notarized legal

residence form, and the required dues payment. He explained the membership criteria included a requirement that "[a]n applicant must be a Muslim who believes in the finality of Prophet Muhammad (PBUH) as the last prophet of Allah (GOD)."

He also stated the application deadline for voting membership in the ICOC had been extended from June 30, 2019, to December 31, 2019, and "ICOC management . . . made numerous announcements . . . encouraging people to apply" by the extended deadline. He reviewed the 147 applications prior to their delivery to the ICOC on December 31, 2019, and he determined they were complete. He further stated that he "understood" that a "selected group of [fifty] out of [eighty]" members of the ICOC "are now being asked to have ALL those applications rejected regardless of" of the fact they were "timely and properly submitted by December 31, 2019." Shah's certification does not provide the basis for his "understanding," or indicate his understanding is based on his personal knowledge. See R. 1:6-6.

During oral argument on plaintiffs' motion, the parties and the court referred to a certification from an individual identified as "Mr. Haque," who we surmise based on the colloquy before the court is defendant Sagheer Ul Haque.

6

It appears the certification was submitted in opposition to plaintiffs' motion.[4] The court explained the certification stated "the other three members of the [Board] resigned in February of 2020," and that Haque, who is a Board member, "recused himself from the membership application process." The Haque certification apparently also included a statement that he believed Suleman's application "will be rejected because he's been disruptive since" the October 4, 2019 settlement.

Defendants' counsel argued that Suleman had "gotten into shouting matches to the extent that . . . [G]eneral [B]ody members . . . called the police on him," and the General Body members intended to seek a restraining order against him. Under the bylaws, the ICOC's "General Body" is comprised of the ICOC's voting members, and the General Body's decision is final on all ICOC matters.

Defendants' counsel further asserted the General Body of the ICOC was "going to review and reject [the 147] applications" because of Suleman's actions

---

[4] Plaintiffs do not include the Haque certification in their appendix on appeal. See R. 2:6-1(a)(1)(I) (requiring appendices on appeal include "such . . . parts of the record . . . as are essential to the proper consideration of the issues"). We are therefore unable to address any issues requiring a review of the Haque certification. See Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002).

following entry of the October 4, 2019 order, and the applications of the other 146 individuals would be rejected by the General Body based on their "guilt by association" with Suleman. Defendants' counsel argued there is "no obligation for the ICOC general membership to be forced to accept people who they assert are divisive in the community."

The court determined the 147 applications were submitted by December 31, 2019, in accordance with the October 4, 2019 order. The court also found there was no credible explanation for the four-month delay in considering and deciding the applications, "other than what [it] learned [during oral argument] with regard to the behaviors of . . . Suleman." Relying on Shah's certification, the court further found "review of the applications" is "a ministerial function," and the failure to review the applications "over the past four months violate[d] the heart of the" parties' settlement – that "applicants who have complied with the requirements of [the agreement] would have the right to vote [in the ICOC's 2020 election] if their applications were accepted."

The court concluded "the Executive Committee, or whatever body is responsible for the review of these applications, should, per the [c]onstitution or [b]ylaws of the ICOC, . . . review [the] applications." The court further concluded the applications should be "reviewed as soon as possible and if the

8

applications meet the eligibility requirements under the [c]onstitution and [b]ylaws, they shall be admitted as members of the ICOC as of December 31[], 2019, and, thus, be eligible to vote in the 2020 elections."

The court entered a May 8, 2020 order deeming timely the applications submitted by December 31, 2019, and requiring that the applications "shall be reviewed in accordance with the by-laws and constitution of the ICOC to determine eligibility for membership . . . as soon as practicable." The court also determined "the ICOC election, previously contemplated to be held in April shall not occur until" there is compliance with the order.

Two months later, plaintiffs moved under Rule 1:10-3 to enforce the court's October 4, 2019 and May 8, 2020 orders. In support of their motion, plaintiffs submitted only a letter brief from their counsel and the "[e]xhibits annexed thereto." The record on appeal does not include the exhibits and does not reflect that plaintiffs' motion was supported by an affidavit, certification, or any other competent evidence.[5]

---

[5] Plaintiffs' notice of motion stated only that they relied on the letter brief and exhibits "annexed thereto" in support of their motion. The record does not identify the exhibits, and the index to plaintiffs' appendix on appeal does not identify any documents as exhibits that were submitted in support of their July 2010 Rule 1:10-3 motion. See R. 2:6-1(a)(I); Soc'y Hill Condo. Ass'n, 347 N.J. Super. at 177-78.

Defendants relied on a certification from Hisham Hamza in opposition to the motion. Hamza is a member of the ICOC's General Body. The ICOC's Executive Committee, which is also referred to as the AAMELA, appointed Hamza to the Membership Committee to review the applications Suleman submitted on December 31, 2019.[6] Hamza serves as the Membership Committee's chairperson.[7]

On May 9, 2020, Hamza and other ICOC members were informed of the court's May 8, 2020 order. The General Body and the Executive Committee "agreed that the best way forward would be to review and give a decision on each of the applications submitted by Mr. Suleman." Hamza claimed he spoke with defendants' counsel "at length" about the review process for the applications, and counsel "referred [him] to the ICOC [b]ylaws and the list of criteria for membership in ICOC." Hamza then spoke with the Membership Committee "at length . . . to ensure that each member of the . . . Committee was aware of how each application was to be reviewed."

---

[6] Under the bylaws, the Executive Committee, or AAMELA, runs the ICOC's day-to-day operations.

[7] Hamza notes that Article IV, Section D, Subsection A, paragraph (d) of the bylaws vests the Executive Committee with the authority to appoint voting members of the ICOC to chair committees.

A-0257-20

Hamza described the procedure that was employed to consider and decide the applications, explaining that "[e]ach application was subject to a vote by the Membership Committee, and acceptance or rejection was premised on a majority vote." Hamza stated that he based his decisions on his "understanding of the requirements written in the [b]ylaws and [his] personal belief as to what type of General [B]ody member will be best for [his] masjid." He certified that none of defendants were involved in the Membership Committee's deliberations, that "[n]o outside person influenced" his decision, and he "believe[d] the same [was] true" for the other [C]ommittee members. Hamza explained that his decision on "Suleman's application had nothing to do with [Suleman's] involvement as a [p]laintiff in this case," but was instead based on his "direct knowledge of the type of person . . . Suleman is, as [he] witnessed [Suleman's] behavior with others during prayers and other religious events after the October 2019 [c]onsent [o]rder."

Hamza stated that after the Membership Committee completed its deliberations, it reported its determinations concerning each application to the Board. His certification does not reveal the outcome of the deliberations, but it appears undisputed the Membership Committee rejected each of the 147 applications that were delivered on December 31, 2019.

11

In their motion to enforce the May 8, 2020 order, plaintiffs sought determinations that the 147 applications were timely submitted and the 147 applicants were ICOC voting members "in good standing and . . . eligible to vote or otherwise participate in the 2020 election for the . . . Board members that [was] to be held" under the ICOC's bylaws. Plaintiffs also sought an award of attorney's fees and cost.

The court heard argument on the motion and determined, based on its review of the ICOC's bylaws and Hamza's certification, that the ICOC's consideration of the applications constituted more than a "ministerial function" because "there are certain criteria with regard to the eligibility of members of the ICOC that are laid out in the" bylaws.[8] The court also noted that its May 8, 2020 order required only the processing of the applications in accordance with the ICOC's bylaws.

The court detailed the bylaws' eligibility criteria for voting membership, including requirements that the applicants "believe in the finality of the Prophet

---

[8] Under the bylaws, "[a]ny Muslim" meeting twelve separately delineated criteria "shall qualify to be a [v]oting [m]ember of the ICOC." As noted, the criteria include belief "in the finality of the Prophet Muhammad" and "in the five Pillars of Islam, namely Shahada, Prayers, Zakat, Fasting[,] [and] Pilgrimage to Makkah." To qualify for voting membership, an individual "shall [also] refrain from any expression or action detrimental to the [c]ause of Islam, ICOC or the [u]nity of the Community."

Mohammad" and "in the Five Pillars of Islam . . . [S]hahada, [P]rayers, [Z]akat, [F]asting[,] and [P]ilgrimage to Makkah." The court quoted extensively from Hamza's certification describing the Membership Committee's process in reviewing the applications. The court found Hamza's certification established the applications were processed in accordance with the bylaws and therefore there was no violation of the requirements of the May 8, 2020 order.

The court also determined it could not grant plaintiffs the relief sought in their motion – granting the 147 applicants voting membership in the ICOC – because the eligibility criteria for membership required determinations concerning each applicant's faith. The court found that "[w]ell-settled principles prohibit [c]ivil courts from resolving ecclesiastical disputes that depend on inquiry into questions of faith and doctrine."

The court entered an order denying plaintiffs' Rule 1:10-3 motion. This appeal followed.

## II.

We review a court's decision on a motion to enforce litigant's rights under Rule 1:10-3 under an abuse of discretion standard. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018). A court's decision will only be reversed as an abuse of discretion where it was "made without a rational

explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002).

"Rule 1:10-3 provides that 'a litigant in any action may seek relief by application in the action.' A proceeding to enforce litigants' rights is a means to 'coerce [a party] into compliance with the court's order . . . .'" Abbott v. Burke, 206 N.J. 332, 342 n.3 (2011) (alterations in original) (quoting Essex Cnty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)). A Rule 1:10-3 motion to enforce litigant's rights may be brought to enforce compliance with a settlement agreement or consent order by specific performance. See Jersey City Redevelopment Agency v. Clean-O-Mat Corp., 289 N.J. Super. 381, 404 (App. Div. 1996) (explaining "there may be special considerations warranting specific performance of a consent judgment and that there are strong public policy considerations favoring enforcement of settlement agreements" (citation omitted)). "Relief under Rule 1:10-3 . . . is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." N. Jersey Media Grp., Inc. v. State, Office of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997)).

"The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott, 206 N.J. at 371. "The particular manner in which compliance may be sought is left to the court's sound discretion." N. Jersey Media Grp., Inc., 451 N.J. Super. at 296 (quoting Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001)).

An order to enforce litigants' rights is only appropriately granted where the record reflects that "the non-compliant party was able to comply with the order and unable to show the failure was excusable[.]" Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012). The "objective of [Rule 1:10-3] hearing[s] is simply to determine whether . . . failure [to comply with an order] was excusable or willful." In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 18 (2015) (first, third, and fourth alterations in original) (quoting Schochet v. Schochet, 435 N.J. Super. 542, 548 (App. Div. 2014)). "[T]he judge, before ordering any sanction, must determine that defendant has the ability to comply with the order [that] he has violated." Manalapan Realty, Ltd. P'ship v. Twp. Comm., 140 N.J. 366, 392 (1995) (second alteration in original) (quoting Essex Cty. Welfare Bd., 133 N.J. Super. at 195).

Here, plaintiffs argue the court erred by denying their Rule 1:10-3 motion because it failed to give effect to the October 4, 2019 consent order's provision stating "[i]nvolvement in this case shall not preclude anyone from membership" in the ICOC. Plaintiffs contend the rejection of the 147 applications presented by Suleman on December 31, 2019, the ICOC's departure from past membership admissions procedures described by Shah, and defendants' counsel's statement the applications were rejected due to the applicants' association with Suleman, established defendants violated the consent order's prohibition against precluding voting membership based on "[i]nvolvement in this case." Plaintiffs further claim that because defendants violated the October 4, 2019 order by rejecting the applications based on the applicants' involvement in the case, the court erred by finding enforcement of the order required the court's determination of theological issues.

We are not persuaded the court abused its discretion by denying plaintiffs' Rule 1:10-3 motion. In the first instance, the October 4, 2019 and May 8, 2020 orders were entered only against the five individual defendants. The orders were not entered against the ICOC, the Board, the Executive Committee, or the Membership Committee, and we find no basis in the record to conclude the ICOC, the Board, the Executive Committee, or Membership Committee were

bound to honor the orders, or that any actions taken by them could support relief to plaintiffs under Rule 1:10-3.  As noted, "[a] proceeding to enforce litigant's rights under Rule 1:10-3 'is essentially a civil proceeding to coerce the defendant into compliance with the court's order for the benefit of the private litigant.'" State v. Lawrence, 463 N.J. Super. 518, 524 (App. Div. 2020) (quoting Pasqua v. Council, 186 N.J. 127, 140 (2006)).  Thus, to obtain relief under Rule 1:10-3, plaintiffs were required to establish defendants violated the orders.  See Manalapan Realty, Ltd. P'ship, 140 N.J. at 392 (explaining sanctions under Rule 1:10-3 may be ordered only after the court determines the defendant has the ability to comply with the "order [that] he has violated"); see also Wear, 455 N.J. Super. at 459 (awarding counsel fees under Rule 1:10-3 based on a party's continuous refusal "to comply with [court] orders").

Plaintiffs' motion was dependent on demonstrating defendants violated the orders, but their motion is untethered to any competent evidence establishing that was the case.  Indeed, although they requested the court find as fact that defendants violated its orders following entry of the May 8, 2020 order, plaintiffs did not submit any competent evidence in support of their motion, instead relying on a brief from counsel and some undescribed exhibits.  See R. 1:6-6 (providing motions "based on facts not appearing of record or not

judicially noticeable" may be heard "on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify"). Plaintiffs could not establish defendants violated the orders in the absence of competent evidence, and they provided none. For that reason alone, the court properly denied plaintiffs' motion.

Plaintiffs argue defendants violated the October 4, 2019 order by rejecting the 147 applications in contravention of the prohibition against precluding membership based on "[i]nvolvement in this case," but the record is bereft of any evidence defendants were involved in the decision to reject the 147 applications, or, more particularly that they violated the October 4, 2019 order by taking any action to preclude the applicants' voting membership in the ICOC based on "[i]nvolvment in the case."[9] The only competent evidence presented

---

[9] We note that the scant record presented in support of the Rule 1:10-3 motion, to the extent it is included in the record on appeal, does not identify the 147 applicants or include any competent evidence as to the disposition of their applications. Hamza's certification similarly does not identify the applicants, other than Suleman, and although Hamza does not disclose the Membership Committee's decision concerning Suleman's application, we infer from the certification the application was rejected. We surmise the five plaintiffs had "involvement in this case" within the meaning of the October 4, 2019 consent order because they are parties to the case. We were informed at oral argument on this appeal that only three of the plaintiffs submitted applications by December 31, 2019, but even assuming plaintiffs were among the 147 applicants and that all 147 applications were rejected, there is no evidence the other 142

to the court, Hamza's certification, affirmatively established defendants played no role in the decisions to reject the applications, and that the decisions were made solely by the Membership Committee in accordance with the bylaws.[10] Lacking any evidence defendants took action to preclude an applicant's membership in the ICOC based on "[i]nvolvement in the case," the court was compelled to deny plaintiffs' motion. Most simply stated, plaintiffs did not present the court with any evidence establishing defendants violated either order. The court therefore did not abuse its discretion by denying plaintiffs' Rule 1:10-3 motion.

Plaintiffs also argue the court erred by finding it could not grant the relief plaintiffs sought—deeming the 147 applicants voting members in the ICOC—

---

applicants who are not plaintiffs had "[i]nvolement in this case" such that they fall within the protection of the October 4, 2019 order. None of the other 142 joined the lawsuit as plaintiffs or were made parties to it by plaintiffs. We need not decide the scope of the "[i]nvolvement in the case" provision of the October 4, 2019 order. As we explain, the court otherwise did not abuse its discretion by denying plaintiffs' Rule 1:10-3 motion because plaintiffs failed to present evidence defendants violated the court's orders.

[10] Hazma's certification further established defendants, who plaintiffs allege are members of the Board, had no involvement in appointing him to the Membership Committee. His appointment, and the appointment of the other members of the Committee, were not made by the Board. They were made by the Executive Committee, and there is no evidence any defendant is a member of the Executive Committee.

A-0257-20

without improperly deciding theological issues concerning each applicant's faith. See generally Solid Rock Baptist Church v. Carlton, 347 N.J. Super. 180, 191 (App. Div. 2002) ("Well-settled principles prohibit civil courts from resolving ecclesiastical disputes that depend upon inquiry into questions of faith or doctrine."). Plaintiffs argue their motion did not require the court to address any theological issues because they claimed only a violation of the October 4, 2019 order's provision precluding a denial of membership based on "involvement in the case." We need not address plaintiffs' argument because their entitlement to the requested relief was dependent on their first demonstrating defendants violated the orders, and, for the reasons noted, they failed to satisfy that burden.

Any arguments made on plaintiffs' behalf we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0257-20