**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3098-23

ESTATE OF R.J.E. by
S.E., administratrix,

     Plaintiff-Respondent,

v.

R.I.E.,

     Defendant-Appellant.

_____

     Submitted October 16, 2025 – Decided June 9, 2026

     Before Judges Gummer and Paganelli.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0336-19.

     DeTommaso Law Group, attorneys for appellant (Joseph M. Freda, III, on the briefs).

     Hendricks & Hendricks, attorneys for respondent (Patricia M. Love, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant R.I.E. appeals from a provision in a December 19, 2023 order imposing sanctions on her and the trial court's subsequent denial of her motion to vacate that sanctions award.[1] Because we perceive no abuse of discretion or legal error, we affirm.

I.

The parties are familiar with the extensive factual and procedural background of this matter. Thus, we focus on information related to this appeal.

Roger and Rita married in 1995. Roger filed for divorce in 2018. Following a trial, the court entered a Dual Judgment of Divorce (DJOD) on March 12, 2020, which the court amended on July 16, 2020, to correct a "scrivener's error." Rita appealed. We affirmed. See R.J.E., slip op. at 2. Roger died on July 7, 2021, while the appeal was pending. In 2022, Roger's daughter, S.E. or Sarah, became the administrator of his estate (the Estate).

The parties continued litigating the DJOD's financial provisions, with the Estate filing multiple motions to enforce litigant's rights. In an August 19, 2022 order, the court directed Rita to cooperate with the listing of the marital home

---

[1] We use initials or pseudonyms for the parties and others involved in this case to protect the privacy of the parties and consistent with opinions we issued in prior appeals involving these parties. See Est. of R.J.E. v. R.I.E., No. A-3218-21 (App. Div. June 15, 2023); R.J.E. v. R.I.E., No. A-4592-19 (App. Div. Aug. 24, 2021). For ease of reading, we refer to R.J.E. as Roger and R.I.E. as Rita.

A-3098-23

for sale and "to provide all necessary information about her retirement accounts for the completion of [qualified domestic relations orders (QDROs)]."[2]  The court imposed a $200 daily sanction for noncompliance.  In an accompanying statement of reasons, the court found Rita had taken no action to sell the marital home "[d]espite the clear mandates of the DJOD" and a May 9, 2022 order and that she had "no justification for [her] failure to comply."

In a January 27, 2023 order, the court required Rita to "immediately cooperate with [the designated realtor] to prepare and list the home [for sale] by March 3, 2023," and to provide by February 10, 2023, "all necessary information about her retirement accounts for the completion of QDROs" and proof of beneficiary designations; imposed on Rita a $200 daily penalty for every day after March 3 the marital real property remained unlisted, "unless through no fault of her own," and for every day after February 10 she failed to provide the required information; awarded a $26,400 judgment to the Estate for Rita's failure to provide the QDRO information required by the August 19, 2022 order; and awarded the Estate $2,018.75 in counsel fees and costs.  In an accompanying

---

[2]  A QDRO "creates or recognizes the existence of an alternative payee's right to, or assigns to an alternative payee the right to, receive all or a portion of the benefits payable with respect to a participant under a [pension] plan." Orlowski v. Orlowski, 459 N.J. Super. 95, 104-05 (App. Div. 2019) (quoting 29 U.S.C. § 1056(d)(3)(B)).

A-3098-23

statement of reasons, the court found Rita had "remain[ed] non-compliant with the DJOD and the May 9, 2022 [o]rder" and had "no justification" for her "failure to comply with previous [o]rders."

On June 5, 2023, the court entered a consent order executed by the parties and their counsel in which Rita agreed to pay the Estate $300,000 from her retirement assets within thirty days of entry of the consent order, after which all obligations would be deemed satisfied. Specifically, paragraph four of the consent order provided:

> In full and complete satisfaction of any and all obligations due and owing in connection with the [DJOD], the Amended [DJOD], or subsequent [c]ourt [o]rders and [j]udgments, [Rita] shall <u>transfer the sum of $300,000.00 to [the Estate] from her retirement assets through [a QDRO] to ensure that there is no taxable impact to [Rita]</u> and/or future tax-exchange rates associated with [Rita's] transfer. [Rita] has retained the services of Judith Deer from All Pro QDRO, PO Box 1600, Livingston, New Jersey 07309, 973-716-9777 to prepare the necessary documentation to ensure the transfer of these funds to [the Estate] within <u>thirty (30) days of the entry of the within [c]onsent [o]rder.</u>
>
> [(Emphasis added).]

The parties agreed to withdraw all pending motions and that "all financial litigation shall be deemed concluded." Rita also agreed to withdraw her pending

appeal and a caveat she had filed regarding a will.  See Est. of R.J.E., slip op. at 2.

Rita's counsel submitted to the court a draft QDRO for a Nassau Personal Protection Choice Annuity account, and the court executed and entered it on June 5, 2023.  The QDRO named Rita as the "Participant/Annuitant" and Roger as the "Alternate Payee."   The QDRO contained the following provision in paragraph seventeen:

> For purposes of Sections 402(a)(l) and 72 of the Internal Revenue Code, any Alternate Payee who is the spouse or former spouse of the Annuitant shall be treated as the distributee of any distribution or payment made to the Alternate Payee under terms of this [o]rder, and as such, will be required to pay the appropriate federal income taxes on such distribution.  The Alternate Payee's Estate shall be responsible for the payment of all taxes incurred by reason of any benefits paid to the Alternate Payee's Estate under this [o]rder. The Alternate Payee's Estate shall be provided with appropriate tax information so as to enable the Alternate Payee's Estate to report and pay applicable tax.

In sum, pursuant to the consent order and the QDRO, Rita had to transfer $300,000 from her retirement assets to the Estate by July 5, 2023.  The Estate would have been responsible for the tax payments associated with the transfer had it occurred.  However, it did not occur.

5                                                         A-3098-23

By September 2023, Rita had not made the $300,000 payment. On September 11, 2023, the applicable plan administrator advised the Estate's counsel that Rita had failed to provide necessary documentation for the transfer and, in the meantime, had been receiving monthly payments from the account. On September 21, 2023, the Estate filed another motion to enforce litigant's rights, seeking entry of a $300,000 judgment "representing the unpaid settlement" amount set forth in the consent order, a judgment awarding the sanctions imposed in the January 27, 2023 order, Sarah's designation as power of attorney to sell the marital home, and a counsel-fee award.

Rita opposed the motion and cross-moved, seeking an order: denying the Estate's motion; compelling the annuity company and immediately transfer ownership of the annuity to the Estate purportedly in compliance with the QDRO; and holding the Estate responsible for any surrender charges associated with the surrender of the annuity if the annuity company refused to transfer it and for any taxes incurred in connection with the surrender of the annuity.

In a certification she submitted in support of the cross-motion, Rita asserted she had "done everything required of [her]" in the consent order, but that the annuity company had failed to transfer the annuity and was requiring a formal surrender of it. Rita maintained the Estate was acting in bad faith and

A-3098-23

was attempting to alter the terms of the consent order and QDRO by compelling her to surrender the annuity, thereby imposing on her financial obligations the Estate had agreed to assume. She blamed the annuity company's purported change in position, rather than her own actions, for "holding up the process."

At the November 3, 2023 oral argument, the Estate's counsel advised the court Rita still had not made the $300,000 payment. Rita's counsel attributed the payment delay to an "institutional issue" with the annuity company rather than Rita's conduct. He suggested the court amend the QDRO to state explicitly that the annuity company must transfer the annuity in full. The Estate's counsel objected, contending the consent order provided for payment "of the sum of $300,000," not the transfer of a financial product.

The court entered a December 19, 2023 order accompanied by a statement of reasons. The court granted and entered a $300,000 judgment against Rita and in favor of the Estate. The court found Rita had not contacted the annuity company "until well after the deadline to transfer the funds to [the Estate] under the June 5, 2023 [c]onsent [o]rder"; had "sat on her hands and delayed the transfer of $300,000 to [the Estate], consistent with [the Estate]'s claims throughout the litigation that [Rita] ha[d] obstructed and delayed at every turn"; and had not complied with the consent order. The court rejected Rita's counsel's

A-3098-23

suggestion to amend the QDRO, finding the Estate was entitled to a cash payment, "not an investment instrument." The court held that "[a]ny surrender charges and tax consequences are the sole responsibility of [Rita] for sitting on her hands and for knowingly entering into a [c]onsent [o]rder, perhaps before understanding the full consequences in transferring $300,000 from [the] annuity."

The court also reduced the sanctions from the January 27, 2023 order to a $30,000 judgment against Rita to be imposed if she failed to pay the $300,000 judgment by March 1, 2024. The court found the marital property remained unlisted for sale, Rita had not established that failure was "through no fault of her own," and Rita "continue[d] to fail to cooperate with the sale of the marital home." The court granted Sarah limited power of attorney regarding the sale of the marital home. The court also found Rita had not provided the required information to the Estate's counsel and had not offered any evidence explaining why she had been unable to provide that information. The court also awarded the Estate $2,206.25 in counsel fees and costs, to be paid by January 5, 2024.

On Rita's cross-motion, the court ordered the annuity company to transfer $300,000 from the annuity to the Estate, "with [Rita] being solely responsible

A-3098-23

for any surrender charges or costs of transfer including adverse tax consequences." The court otherwise denied the cross-motion.

Following a conference with counsel, the court entered a January 10, 2024 order with an accompanying statement of reasons, suspending the provision regarding the limited power of attorney until March 1, 2024, and directing the parties' counsel to "jointly contact" the annuity company by January 16, 2024, "to discuss surrender and/or payment of the annuity, now thought to be less than the $300,000, to be paid to [the Estate] and any potential consequences, understanding [Rita] owes [the Estate] $300,000."

Rita did not meet the March 1, 2024 deadline. On March 18, 2024, the Estate applied for an order to show cause, seeking an order compelling Rita to cooperate with the realtor's scheduled showings of the marital home and to disarm the alarm system during the showings and enjoining her from declining or canceling future showings. In support of the application, the Estate's counsel certified Rita had not made any payments.

In a letter opposing the application, Rita's counsel advised the court that earlier that day he had sent by hand delivery a letter and a check to the Estate's attorney. In the March 18, 2024 letter, Rita's counsel enclosed a $300,000 check and asked counsel to confirm Sarah would cease efforts to sell the marital home.

The next day, Rita applied for an order to show cause, seeking, among other things, an order vacating the $30,000 sanction in the December 19, 2023 order in light of her March 18, 2024 payment. Rita asserted any delay in the transfer of funds was caused by the Estate. The court denied the applications for an order to show cause and converted them to motions.

After hearing argument, the court entered a May 3, 2024 order with an accompanying statement of reasons, deeming some of the requested relief moot in light of the March 18 payment. The court awarded the Estate $3,237.50 in counsel fees. The court denied Rita's request to vacate the $30,000 sanction provision in the December 19, 2023 order. Reviewing Rita's history of noncompliance, the court held the $30,000 sanction was "[a] new sanction . . . entered by the court . . . to compel payment from [Rita] by March 1, 2024," and Rita "failed to comply." The court rejected Rita's reliance on the June 5, 2023 consent order, finding "the court ha[d] already entered a judgment and ha[d] already determined that [Rita] ha[d] violated the [c]onsent [o]rder." The court held Rita's "obligation under the [December 19, 2023 o]rder was to make the $300,000 payment to [the Estate] irrespective of the surrender costs, fees, and tax liabilities."

In her notice of appeal, Rita limited her appeal to the provision in the December 19, 2023 order imposing on her a $30,000 sanction if she failed to pay the $300,000 judgment by March 1, 2024, and the court's denial in the May 3, 2024 order of her request to vacate that provision. On appeal, she argues the court erred by rewriting the terms of the June 5, 2023 consent order and QDRO, giving the Estate a better deal than the one for which it bargained. She also contends the $30,000 sanction was punitive, not coercive, and the court erred in not vacating it after she made the $300,000 payment seventeen days after the March 1, 2024 deadline. Unpersuaded by those arguments, we affirm.

II.

Our review of the Family Part's findings is limited. Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). The Family Part "possesses broad equitable powers to accomplish substantial justice." Finger v. Zenn, 335 N.J. Super. 438, 446 (App. Div. 2000). We "afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022).

11

"However, we confer no deference to a trial court's interpretation of the law, which we review de novo to determine whether the judge correctly adhered to applicable legal standards." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). "Reversal is reserved for only those circumstances in which we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007)).

The court entered the December 19, 2023 order under appeal to resolve the Estate's motion to enforce litigant's rights and Rita's cross-motion. Pursuant to Rule 1:10-3, "a litigant in any action may seek relief by application in the action." A proceeding to enforce litigant's rights "is essentially a civil proceeding to coerce the defendant into compliance with the court's order for the benefit of the private litigant." Pasqua v. Council, 186 N.J. 127, 140 (2006) (quoting Essex Cnty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)). "Rule 1:10-3 provides a means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order." Satz v. Satz, 476 N.J. Super. 536, 554 (App. Div. 2023) (alteration in original) (quoting N. Jersey Media Grp., Inc. v. State, 451 N.J. Super. 282, 296 (App. Div. 2017)) (internal quotation marks omitted).

"Once the court determines the non-compliant party was able to comply with the order and unable to show the failure was excusable, it may impose appropriate sanctions." Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012). A court may impose relief "not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." Satz, 476 N.J. Super. at 554-55 (quoting Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997)). Judicial sanctions must be "rationally related to the desideratum of imposing a sting on the offending party within its reasonable economic means." Holtham v. Lucas, 460 N.J. Super. 308, 322 (App. Div. 2019) (quoting Innes v. Carrascosa, 391 N.J. Super. 453, 498 (App. Div. 2007)) (internal quotation marks omitted). "The sting of a sanction, unlike the specter of contract damages, is designed to deter and coerce." Ibid.

"We review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse[-]of[-]discretion standard." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018). We also review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A trial court abuses its discretion "when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible

basis.'" Wear, 455 N.J. Super. at 459 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

We perceive no abuse of discretion in the court's decision to impose sanctions in the December 19, 2023 order or in its May 3, 2024 denial of Rita's request to vacate those sanctions. Rita purports to rely on the terms of the consent order, but as the court found, she failed to comply with those terms. After repeated failures to comply with orders concerning the sale of the marital home and the provision of information to the Estate's counsel, Rita failed to "transfer the sum of $300,000.00 to [the Estate] from her retirement assets through [a QDRO]" by the agreed-on deadline established in the consent order. (Emphasis omitted). In imposing the sanctions, the court, contrary to Rita's argument, was not rewriting the June 5, 2023 consent order and was not attempting to award damages for Rita's breach of that order. Pursuant to its authority, the court imposed the sanctions as a coercive measure to gain her compliance.

Rita challenges the factual findings underlying the court's decision to impose and maintain sanctions. She contends in her appellate briefs, as she contended in the trial court, that she complied with prior orders, including the consent order, and any delay in compliance was the fault of others. In factual

findings that were supported by the evidence in the record, the court expressly rejected Rita's assertions. We have no basis to overturn the court's factual findings.

Rita contends the court's sanction was punitive and not coercive, arguing the court should have vacated the sanctions because she was late in making the payment by only approximately ten business days. We disagree. In making that argument, Rita fails to recognize her history of non-compliance with court orders. Given that history, the sanctions were neither unreasonable nor excessive and did not constitute an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

15

A-3098-23